today is Mitin Products v. Vision Industries. It's an appeal from a decision of the Patent Trial and Appeal Board, case number 181034. Mr. Daniels, do you want three minutes for the plenum? Yes, I do. Okay. May it please the Court, my name is Scott Daniels. I'm here for the Patentee Appellant item. And there are two issues in this case, essentially claim construction issues that I think mean that the judgment of the Board should be overturned. The first is the so-called patentably movable limitation in Claim 1. The second is the last limitation in Claim 1, which is the restraining element is disengaged by pressing the second arm of the tab. Before I go into those issues, though, I would like to discuss Figure 7 of the patent, which I think is a very good way to visualize what these issues are about the basics of our brief. Figure 7 shows the first pivot position in which the tab is disengaged so that the restrictor blocks the sash. There's a vertical plane that creates a first side and a second side that are referred to in the claim. In Figure 7, there is a line, a notional line, that separates the first side and the second side. The first side is on the right side of the drawing. The second side is on the left side of the drawing. You can see in Figure 1, there's the first arm that protrudes. That's 110. There's the second arm, which is within the housing. That's 112. So if you look at these components in operation, you can see that the first arm is mostly on the first side. The second arm is on the left side. You can see that the second arm comes out to the first side, and the first arm goes inside. When that happens, the tab is in its engaged position, and the window is free to move. In the second pivot position, the first arm, 110, is entirely on the second side, as recited in the claim. The second arm in the engaged position, the portion on the first side, there is a portion on the first side, and arm 2, the second arm, protrudes from the housing. Well, other than you trying to walk us through these figures as you interpret them, what in the specification specifically narrows pivotally movable in the way that you propose? Yes. It is the word between itself. So tell me where, other than in the drawings. It's the word between in the claim. You're talking about the pivotally movable relative to housing between? Between the two pivot positions. That is the first position in which the tab is... What language? I'm looking at claim 1. Yes. What's the specific language? The specific language is the word between. And where in the claim? I see one between. I just read it to you, and you said, no, that's not it. So which between are you talking about? Okay. The tab being pivotally movable relative to the housing between, and it's between a first pivot position in which the tab is disengaged and the window is closed. It's blocked. And the second pivot position in which the window is open because the restraining element is engaged. So the claim is talking about pivotal movement. So your view is, I understand it, is that because it's pivotally movable between one position and a second position, the proper interpretation is that no other movement is allowed between that first position and the second position. Do you understand it? That is the way the appellee describes our position. Okay. And what we're saying is that the claim is open-ended. We acknowledge that, as the board said. So there could be other components. There could be other movement of the tab. But to meet this limitation, you have to have movement of the tab between the first pivot position and the second pivot position, which is entirely pivotal. Now, the tab could move in other ways. So you're saying that the comprising language does not impact this language? Correct. Correct. I'm saying that the comprising language refers to the components in the restrictor. The second comprising language refers to the first arm and the second arm, which constitute the tab. But the limitation explicitly says you have pivotal movement between two positions, the first pivot position and the second pivot position. Now, comprising, we agree that it's open-ended, that there could be additional components in the claimed restrictor. And the tab itself could have other movements. But the movement between the first pivot position and the second pivot position has to be pivotal. It can't have other types of movement in it. So the other side says... Where does it say that? I mean, even if you're saying that it has to be, because it has to be between, it can't do anything else. But it doesn't say entirely pivotal, as you just said. I'm saying that the movement between those two positions has to be entirely pivotal. But where does it say that? Because of the word between. Now, if you are talking... This is in Claim 1? Yes, Your Honor. And what line? I'm looking at page 83 in the record. Tab being pivotal relative to the housing between at least the first position? Yes, Your Honor. That's the between I'm referring to. And so what this argument is joined in our briefs, our position is that when you have two positions and you talk about movement between the two positions, you're talking about going from one to the other. And I think what your opposing counsel is arguing is that because it doesn't say entirely or anything like that, you do have to have movement between one position and the other position. And some of that movement has to be pivotal, but it doesn't all have to be pivotal. That's what I understand the position to be. Yes, and... And why is that not correct when there isn't the word like entirely? Why aren't you reading the word entirely into the claim? Because that is what is meant by the word between in the context of movement. If you talk about the word between two positions in a static situation, that is, Judge O'Malley, you are between Judge Clevenger and Judge Stahl. I agree with that. But if you say you are going between Judge Clevenger and Judge Stahl, you are moving from one to the other. You're moving between them. I think it means that you're moving from his position to her position. But the board said that, you know, I should be pivotally movable towards one or the other, but also do other movements at the same time. That would be fine. But that's what the board specifically found. Well, what they said was by saying that our claims are obvious over Adams, what they were saying is you can move between the first pivot position and the second pivot position, not by just pivotal movement, but by pivotal movement and translational movement, which is what happens in the Adams structure. Right. I don't understand why you're hypothetical. I mean, Judge O'Malley could be sliding in her chair. She could be walking. She's still going between us. So what does it, I mean, if there's... What happens if she slides back a little bit in her chair as she's moving towards Judge Stahl? That would be fine. That would be within the scope of our claim, as long as she's moved from your position to Judge Stahl's position. And the examples that we gave in our argument, I think, makes sense to all of us in the way we use the word between in everyday language. So you talk about, I'm going between Metro Center and DuPont Circle, subway stops. It means you're going from one to the other. It doesn't... Let me start again. You say, I'm going from Capitol Hill to Georgetown by bus. Okay. That's what this claim says here. We're going from position one to position two by pivotal movement. I'm going from Capitol Hill to Georgetown by bus. It doesn't mean I'm getting out halfway and walking the rest of the way. I think every time we use the word... Why couldn't it? I mean, in a comprising claim and the broadest reasonable interpretation, I mean, that's exactly what I was thinking. Okay. Well, you go by bus, but you get off two blocks early because you want some fresh air. I mean, why is that not satisfying that concept? But think of the sentence again. I'm moving between Capitol Hill and Georgetown by pivotal movement, by the bus. That means you're doing the whole thing by the bus. And this claim, in the context of a specification, talking about opening windows, locking the windows through a restrictor, just makes no sense. A comprising claim, if you're comprising that movement from Georgetown to Capitol Hill by bus, would include walking from your house to the bus stop. And then getting to Capitol Hill and maybe getting off one block short and walking. I don't think that it would. Well, why not? Well, first, the part about walking to the bus stop. Assuming the bus stop is still in Capitol Hill. You're talking about movement from one position to another by a particular kind of movement. And that is pivotal movement. And that's... I was saying, if you were a comprising claim and I was going by bus and I leave my house in the corner and turn right to get to the bus stop, then I get on the bus. And I think that's within the limitation between the two places on the bus. Well, as long as the bus stop is in Capitol Hill, you are going from Capitol Hill... But the claim is by bus. But in order to go by bus, I had to walk to the bus stop. But the bus stop, I assume, is in Capitol Hill in the hypothetical. Like pivot position one in this claim. Okay. You're way into your rebuttal. So I'm going to give you three minutes. Restore some. Give you three minutes for rebuttal. And then we need to hear what the friend on the other side has to say about my moving between I took college here. Okay. Please record your honor, Vincent McGeary for the appellee. We spent some time in our briefs on the pivotally movable position. We think that the board articulated its reasoning on the claim construction. So if there's... Unless there's some question as to the construction of pivotally movable that I could somehow amplify, I would prefer to move on to a different issue. Well, I mean, this is the main issue that we focused on. I mean, why doesn't he have a point that it says if it's supposed to pivotally movable, it's supposed to move between these two points by pivotal movement, why would it be by other movements as well? The reason that he has a point is that there's no language in the claim or in the specification which would warrant, as the board said, reading into that the movement between the two positions can be pivoting only. So what happened, just to put it in some context about why the board looked at whether there was comprising language or looked in the specification, is because the board reasoned that the claim simply required that the tab was capable or operationally capable of pivoting somewhere between the two positions. And so it looked for some reason to narrow that claim construction as it was being urged to by the patent owner. Because of that, it looked at the claim language to see if there was anything other than open ended language. It didn't find anything. It looked into the specification to see if there was anything in the specification that would narrow it. It didn't find any. So based on that, it applied the broadest reasonable interpretation, which is the standard, gave the claims their meaning that strikes everyone at first glance, that between doesn't require any more limiting that language. And it certainly doesn't require limiting language of only from A to B. And so you're really changing two things. As we pointed out in our briefs, you're changing between to from. And you're also saying it has to be without any other movement. So we have to really massage the claim in order to arrive at that claim construction. And the board, I think reasonably so, found it was not warranted. What's your response to the argument that the comprising language just talked about the elements and that comprising doesn't limit or doesn't broaden the language that talks about it having to move between in a pivoting fashion? Yeah. So my response to that is that exactly as I said or alluded to earlier, what the board was doing was trying to find some language that would warrant narrowing the claim. Its basis of its initial construction, if you look on page 16 of its opinion, is the language of the claim by itself requires only a tab, pivotally movable, or capable of rotation relative to the housing between two distinct positions. Now it's being asked, well, gee, we want you to narrow that claim. And we want you to narrow that claim so we can avoid a piece of prior art. And it did what it should do. It looked at the rest of the claim language and the specification to see if there were some intrinsic evidence that would warrant that. And it found none. And I would also point out that below, the argument that we're hearing today about between being the critical language, what happened below is that the patent owner basically- So you're throwing the comprising argument under the bus? I'm not throwing it under the bus. No, I think that was the question that the presiding judge was asking you was- Let me address it again then. I'm not throwing it under the bus. He's looking at the claim elements. The claim elements are all open-ended. So there's no structure that would limit the operation of the pivoting tab. So there's the comprising open-ended language. There's no structure there that would limit it. And then there's nothing in the specification that would limit it. And there's nothing in the language itself that would limit it. So we need some reason to further narrow the claim. And the board couldn't find any. What was relied upon below is really not the arguments that you're hearing here. Mostly what was relied upon below was the submission of patent owner's expert, Mr. Hawker, whose basically reasoning was if it says pivotally movable, if it has any other movement, then it cannot be characterized as pivotally movable. That was sort of the discussion. And then the petitioner's expert presented evidence that, well, wait a minute. No, a person of ordinary skill and art would understand that there could be other movement other than pivoting, and it still would be pivotally movable. And that example that Mr. Carlson gave was the channel lock pliers, which if you know how they operate, pivot and also slide translationally. So that was just an example that he was using to show that a person of ordinary skill and the art wouldn't hear that language, pivotally movable between two positions, as excluding every other type of movement between those positions. So that was basically showing that the extrinsic evidence was not proving the point. The intrinsic evidence doesn't give any reason to narrow it. And the lawyer argument certainly doesn't give any reason to narrow outside pointing to something in the intrinsic evidence or something that the board should have credited and didn't. We don't have any of that here. And Adams wasn't in front of the original examiner who passed this patent to publication? It was not in front of the original examiner. A hundred years later, it showed up. Well, I mean, if we pointed out that the way this got to the IPR position is that the patent was asserted against my client. And so based upon that, prior art searches are done. And that's what the IPR process is for. So is the error of the board in putting the burden on the patentee on the amendment issue harmless? The actual legal error is, I don't think, can be characterized as a harmless error. But the outcome is harmless because the board actually applied what Acroproducts requires. In other words, what the board did was, we knew Acroproducts was pending. So when the motion was made, we presented our evidence that the claims were invalid. It's obvious over Adams and some other pieces of prior art. How do we know that, obviously, you're saying the board properly looked at the evidence, weighed the evidence, and made its determination. But how do we know that it wasn't colored by its belief that the burden was on the patent owner? You only know that by what the board relied on to make its actual decision. And what the board relied on was all the evidence in the record. The board specifically said that. Based upon all the evidence in the record, I credit these aspects of the evidence as demonstrating that these claims are invalid as obvious. That record is closed, right? So if the case went back, that record wouldn't be open? It could not be opened again. The only way I could see the record being open again was if we were the agreed party. Because we relied on the old standard and laws. Then we could come here and say, we want to go back down and get a chance to supplement our evidence. But didn't the board say, based on all the evidence, the patent owner has not proven? No, not completely. What about the language made on page JA43? We conclude the patent owner has not met its burden. Or in page 42, that the patent owner bears the burden of proof to assess. There's other places here where the board repeatedly said, like four times, that the combining Adams and Comora, for example. I mean, how do you respond to all of those statements in the board's opinion? Yeah, so the way I respond to that is that you have to look at in the opinion about why it drew the conclusion that the patent owner hadn't met its burden. And how it concluded that was because we met our burden of proving that the claims were invalid. So if you read the rest of the opinion, there's a because that comes after that. And the because is the reason that I can find that the motion should be denied under the then existing standard is because- Can you give me a specific site for this because statement? Sure. We find on pages 48 and 49. So on 48, they state, further, patent owner has not persuasively rebutted petitioner's rationale for combining Adams and Comora. Also on page 49. Right. That's the problem. We find patent owner's contentions unpersuasive. We find that they haven't rebutted your evidence. I mean, those are conclusions about based on where they're putting the burden of proof. The reason they didn't rebut the evidence is because they didn't put in any reply after we put in our evidence on opposition to the motion. So at that point, if you look at the opinion as a whole, the opinion is definitely saying that we proved, through Mr. Carlson, that the claims would be invalid. It says petitioner has established that the newly added limitations do not patently distinguish over the prior art. Yeah, I'm not grabbing that language, but I certainly understand that that's what you're saying. The other place that you can look to is we made other arguments. We did make the argument that he didn't sustain his burden on the motion on 112. We said there was no written description support for a closed-ended limitation, if consisting only. We also made the argument that he didn't meet his burden because he didn't distinguish it over all the prior art of record. He only distinguished it over Adams. And if you look at the board's opinion on page 44, it states, given our disposition of this issue, that's the issue of unpatentability, we did not address the other arguments made by petitioner. Those are the arguments where we were saying that their burden, moving forward, wasn't met. There's also, I think, another reason that there's no reason, and the court alluded to it, to remand this, and that is the record is closed. So this court has the discretion to just take the issue. It's been briefed by both sides on the issue of unpatentability. The evidence is there. The record is closed. They made their argument in their opening brief that the court erred in finding those claims unpatentable, and we responded to it in our opposition. As an appellate court, you think just because we now have jurisdiction, we have the ability to go ahead and consider something where there's a change in law? I think that you do. Just because it's closed? We can make fact findings? You can't make fact findings, but all the facts are there. And that was alluded to. The record is closed. There's nothing to be done down below. And so since the record is closed, there's... Good cause shows. So we can't be certain that the record is forever shut. Well, what would be? There's no reason to... I don't know what the reason would be, sir. Well, let me advocate for my client that there is no reason. If at the beginning of this process, the moving party was under the impression that EIDL Systems was the controlling... Let me discover some Mother Prior Earth. Well, I mean, look... It was inadvertent. It wasn't our fault. We should have had this prior earlier, yada, yada, yada, and we need to look at that. If we were the petitioner and looking to invalidate it, sure. But in this case, the party that's asking to send it back down is the patent owner. And so at the time that the patent owner made its motion, it was under the impression that it had the whole burden. So it had the burden of coming forward with its best case, which it did. We didn't have any burden to put in anything, but we did. We put in our whole case because we knew that case was pending. Are you familiar with our court's decisions in Serona, Bosch, or Silver Peak? I mean, in each of those situations, this court remanded for the board to consider the issue in the first instance. Yeah, I'm familiar with Bosch, and in Bosch, of course, we... Are you saying all those cases are wrong? No, they're distinguishable. They are distinguishable because in Bosch, the two issues that were before the board were 112 on a means plus, excuse me, in front of the court, was a 112 argument. The board below said in Bosch, you were denying your motion because your claim is indefinite, because you don't have the support for your means plus function in your new claim. And the second thing they said is, we're denying your motion because you failed to distinguish over all the prior order of record. That's not what happened here. What happened here is the board said, we're denying your motion because the petitioner proposed claims would be invalid, with a full record, claim charts, declarations, that was then unrebutted on the reply aspect of the motion. They could have stepped up and met that showing that we made, and the patent owner didn't. So there's absolutely no reason to return it back down to the board. It would really be aggrieving the petitioner in your case. Sounds like you're not too worried about what happens on the remand. Well, certainly money is not trivial in handling these cases, but also the patent remains valid until we get a mandate. So if we go back down, have to come all the way back up, wait for an appeal, that patent sits out there. And this is a real world situation. I also want to point out that there is another piece of discretion that the court connects with. What's the status of the district court case? There's no district court case. Oh, I thought you said that there was a litigation filed against you. No, I said the patent was asserted. It was asserted outside of litigation. It was asserted with a letter requesting that the... There is no litigation. There is no litigation. The only proceeding was the IPR proceeding. And so again, there was an opportunity for... Look, we pointed this out and it may seem like it's somewhat procedural, formalistic, but the fact of the matter is that it was on us to alert the board that the aquaproducts case was pending. They asked for idle-free systems. And then when we put forward aquaproducts and says it's out there, they could have given the board the opportunity to hear their arguments about how this all fits together. And they didn't do that. So there's nothing in either Bosch or... So your view is that they waived it by not arguing? Well, they put cases... Yeah, it's a quasi waiver argument. The argument is this. They cited a case in their reply. I think it's Fishey that said that when there's a supervening change in jurisprudence that this court need not hold waiver. But it's still discretionary. There's nothing that says you have to remand this back. It's certainly within the court's discretion if they think everyone got a fair shake and the record is closed to take it up or just deny the appeal as failure to preserve it below. So that's completely within the court's discretion and we think it ought to be exercised here. Okay, thank you. Thank you. The second point I wanted to make about why this case should be overturned has to do with the last limitation of the claim. That is the limitation that says that the tab is... Well, you can't bring that up in rebuttal because he didn't address that. You didn't address it in your opening argument. So this is rebuttal. Okay, thank you, Your Honor. We do discuss it in our briefs. But why isn't the board's misstatement of the law with respect to the burden harmless when ultimately their conclusion was that after considering the party's arguments and evidence, we find that Petitioner has established that the newly added limitations do not patently distinguish claims 51 and 52 over the prior act? Because if you look at the opinion as a whole, it's very ambiguous about whether they actually believed that the Petitioner had met its burden. Can you show us in the opinion were there any doubt stated by the board about the quality of the Petitioner's evidence? I recall, though, there were quotations from, read by Judge O'Malley, in which she talks about, refers to the board... Right, I mean, there's no doubt that when the board recited the standard, they got it wrong. But the question is, I mean, we, you know, Judge Lori always says we review judgments, not opinions. So the judgment here was that Petitioner established that the claims were not patently distinct. Why isn't that judgment affirmable just as that judgment, regardless of misstatements they may have made about the burden? To me, the who has the burden of proof on any issue is the first thing that a court considers. Every time I've been in court, the judge wants to know who has the burden of proof. And to me, it seems so central to the question of who has established whether they're right or wrong about... But it says Petitioner has established. I know, Petitioner has, I know they said that. But how do you read their minds about the effect that their misunderstanding of who bears the burden of proof had on the outcome? I think it's really impossible to know. Okay, anything else? Yes, Your Honor. On the question of between, I hope that you would look at the patent as a whole. And the reason I went through figure seven at the very beginning to show the first side, the second side, how the tab moved, the point of those limitations in the middle of our claim about the first side, the second side, all have to do with the operation of our system, going from an engaged position to a disengaged position. And according to the board's understanding and what we heard from Appellee, they aren't talking about going from an engaged position to a disengaged position. It can be just any point between those two where there's pivotal movement. And I think if you look at how our system operates, it is through just touching the tab to create a disengaged arrangement for one position and then moving to the engaged position. And that is what we were trying to get at in this claim language, to refer to the movement. You're way out of time. We understand your point. We'll take the case under advisement. This court is adjourned.